# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DIOCESE OF HARRISBURG**, Plaintiff | : : : | **CIVIL ACTION NO. 1:07-CV-2283** |
| v. | : : | **(Judge Conner)** |
| **SUMMIX DEVELOPMENT COMPANY, THF HARRISBURG DEVELOPMENT, L.P., &** **THF HARRISBURG REALTY, INC.**, Defendants | : : : : : | |

## MEMORANDUM

This case stems from a purchase and sale contract that the plaintiff, the Diocese of Harrisburg (the "Diocese"), claims was breached by the defendants, Summix Development ("Summix"), THF Harribsurg Development, L.P. ("THF Harrisburg") and THF Harrisburg Realty, Inc. ("THF Harrisburg Realty"). Presently before the court is plaintiff's summary judgment motion on all claims (doc. 48). We will evaluate the motion under the well established standard. *See Lawrence v. City of Philadelphia*, 527 F.3d 299, 310 (3d Cir. 2008). For the reasons that follow, we will deny the motion.

## I. Statement of Facts

### A. Factual Background

The events that gave rise to this litigation began October 15, 2003 when the Diocese and defendants entered into a contract (the "Purchase Agreement") under which defendants agreed to pay the Diocese $12,000,000 for real estate, home to the Holy Name of Jesus ("HNJ") campus, located in Lower Paxton Township, Dauphin

County, Pennsylvania. (*See* Doc. 15 ¶¶ 1-2). Rather than pay the plaintiff directly, the defendants agreed to pay the purchase price under a construction contract for the building of a new HNJ campus on property owned by the Diocese in another township. (Doc. 55 ¶ 1). The new campus was to include a church, school, office, rectory, gymnasium and football field. (Doc. 50 ¶ 1). The Purchase Agreement provided that the total cost of the new campus would be $16,000,000 to be executed under a construction contract with Westra Construction, Inc., a non-party to the litigation. (Doc. 55, Ex. 1 § 2).

The Purchase Agreement provided nine contingencies that needed to be satisfied in order for the defendants to be obligated to close. Of these nine contingencies, three are at issue in the case *sub judice*: (1) the Diocese acquires the necessary permits, licenses and approvals for the new HNJ campus; (2) the parties and Westra Construction approve construction plans for the new HNJ campus; and (3) the parties and Westra Construction enter into a construction contract. (Doc. 55, Ex. 1 § 5). The Purchase Agreement contained a clause specifying that if the contingencies are not met, the agreement may terminate. *Id.*

Throughout the original due diligence period, the parties engaged in a joint effort to acquire the necessary governmental approval for the new Holy Name of Jesus campus. (Doc. 50 ¶ 18). The approval process however was not without difficulties. (*See* Doc. 50 ¶ 45). As a result, the parties entered into negotiations to extend the due diligence period to allow more time to obtain municipal approval. (Doc. 49 pg. 6).

On November 2, 2004, the parties reached agreement on an amended sale agreement ("amended agreement") that extended the due diligence period to April 15, 2005 with the option to extend the period, if elected by the defendants, to April 15, 2006. (Doc. 55, Ex. 2 § 1). The amended agreement further provided that if the defendants were to terminate the Purchase Agreement at any time prior to the expiration of the due diligence period that they would reimburse the Diocese for all expenses, to a maximum of $750,000, it incurred in pursuing governmental approval for the new campus location. *Id.* This reimbursement provision, however, contains two exceptions. If the defendants terminated the agreement due to the plaintiff's default or if the contingencies were not satisfied due to the fault of the plaintiff, then the defendants are not liable to reimburse the Diocese's third-party expenses *Id.*

On January 24, 2005, West Hanover Township, Pennsylvania granted the necessary land use permit for the new Holy Name of Jesus campus. (Doc. 50 ¶ 22). On February 22, 2005, a local citizen's group appealed West Hanover Township's decision to grant the permit. (Doc. 50 ¶ 23).[1] Subsequently, on April 10, 2006, Michael Staenberg, president and co-founder of THF, through a letter attached to an e-mail, terminated the Purchase Agreement. (Doc. 50 ¶ 56). In the termination letter, Staenberg thanked the parties for their hard work and indicated that "for a

---

[1] As of the date of this memorandum, the appeal is pending in the Court of Common Pleas of Dauphin County, Pennsylvania. *Id.*

variety of reasons" the deal "could not be put together." (Doc. 50, Ex. I, doc. 011477).

### B. Procedural History

The Diocese commenced the instant action in the Court of Common Pleas of Dauphin County on November 12, 2007, alleging breach of contract against Summix, THF Harribsurg and THF Harrisburg Realty, Inc. Specifically, the Diocese claims that the defendants breached the Purchase Agreement when they failed to reimburse the Diocese for expenses incurred in its attempt to obtain government approval for the new HNJ campus. On December 17, 2007, the case was removed to this court. We have jurisdiction over this matter pursuant to 28 U.S.C. § 1332.

The plaintiff filed its summary judgment motion on September 16, 2009, arguing that there is no genuine issue of material fact and asserting that the defendants nevertheless failed to produce any evidence showing the Diocese at fault for any breach. (Doc. 49). The defendants, however, counter that the evidence indicates that there is a dispute as to plaintiff's fault and as to the measure of damages should the defendants be found liable. The parties have fully briefed these issues, which are now ripe for disposition.

## II. Discussion

In this diversity case, the Diocese asserts common law breach of contract claims against all defendants. Under Pennsylvania law, which the parties agree applies in this case,

4

> [c]ontract interpretation is a question of law that requires the court to ascertain and give effect to the intent of the contracting parties as embodied in the written agreement. Courts assume that a contract's language is chosen carefully and that the parties are mindful of the meaning of the language used. When a writing is clear and unequivocal, its meaning must be determined by its contents alone.

*Dep't of Transp. v. Pa. Indus. For the Blind & Handicapped,* 886 A.2d 706, 711 (Pa. Commw. 2005)(internal citations and quotation marks omitted). Where a contract's language is ambiguous, extrinsic or parol evidence may be considered to determine the parties' intent. *Murphy v. Duquesne Univ.* 777 A.2d 418, 429 (Pa. 2001).

> A contract contains an ambiguity if it is reasonably susceptible of different constructions and capable of being understood in more than one sense. This question, however, is not resolved in a vacuum. Instead, contractual terms are ambiguous if they are subject to more than one reasonable interpretation when applied to a particular set of facts.

*Id.* at 430. (citations and internal quotation marks omitted). Otherwise, lacking any ambiguity, the plain language of an agreement will be enforced. *Gene & Harvey Builders, Inc. v. Pennsylvania Mfr.'s Ass'n Ins. Co.,* 517 A.2d 910, 913 (Pa. 1986).

The amended agreement provides, in relevant part:

> Purchaser may terminate the Purchase Agreement at any time prior to the expiration of the Due Diligence Period as extended; provided, however, if Purchaser terminates the Purchase Agreement for any reason other than Seller's default, or if the Agreement cannot be fulfilled due to the contingencies in the Agreement (i.e. municipal approvals, permits, etc.) *not being satisfied at no fault of the Seller*, Purchaser shall reimburse Seller for all its third-party costs and expenses incurred in attempting to obtain governmental approvals...up to a maximum reimbursement amount of $750,000.00....All reimbursements shall be made within 60 days of the date of the termination of the Agreement, or within 60 days of the date of an adverse municipal or Court ruling which is not appealed.

5

(Doc. 55, Ex. 2)(emphasis added). The critical part of the clause is the phrase "no fault of the Seller." This language is unambiguous in its meaning: if the contingencies are not satisfied due to the fault of the plaintiff, then the defendants are not liable to reimburse the Diocese's third-party expenses.

The Diocese's motion raises four separate issues, to wit: (1) whether the Diocese is the real party in interest; (2) whether the defendants "advanced" $750,000 on behalf of plaintiff; (3) whether plaintiff breached the purchase and sale agreement; and (4) whether the defendants breached the first amendment to purchase and sale agreement. (Doc. 49, pgs. 12-19). For the first issue, defendants concede that the Diocese is the real party in interest. (Doc. 56, pg. 6). Issues three and four concern whether there is a genuine issue of fact as to who breached the contract. We will conflate these two issues into whether the Diocese met its burden of showing that there is no genuine issue of material fact for its breach of contract claims. To put it another way, have defendants, as the non-movants, proffered sufficient evidence for a reasonable juror to conclude that the Purchase Agreement contingencies were not met as the result of some act or omission on the part of the Diocese. *See G-I Holdings, Inc. v. Reliance Ins. Co.*, 586 F.3d 247, 253 (3d Cir. 2009)(citing for summary judgment standard). Based on the following, the court concludes that the defendants have met their burden.

The Diocese cites only the contingency regarding governmental approval of the new HNJ building site in support of its argument that the other contingencies could not be fulfilled since the West Hanover Township decision was on appeal.

(Doc. 49, pg. 19). However, as defendants indicate, several other contingencies, namely the contingencies concerning approval of construction plans and the execution of a construction contract, were not fulfilled during the due diligence period. Defendants offer testimony from several witnesses, including Monsignor Lawrence and David A. Smith, both working for the Diocese, that a construction contract was never signed by the plaintiff as required by section 5(f) of the Purchase Agreement. (*See* Doc. 55, Ex. 5, pg. 5 and Doc. 55, Ex. 6, pg. 22-23)(Lawrence deposition; (Doc. 55, Ex. 1 § 5(e)). In addition, defendants offer testimony indicating that a construction plan was never approved for the HNJ campus as required by section 5(e) of the Purchase Agreement. (*See* Doc. 55, Ex. 5, pg. 111-12). Based on the above, the court concludes that a genuine issue of fact exists as to whether the contingencies of the construction agreement were fulfilled. Accordingly, summary judgment is inappropriate on this issue.

The Diocese argues that defendants have not offered evidence indicating that it is at fault. The evidence, however, contradicts plaintiff's assertion. Defendants submit evidence that raises the inference that the scope and budget for the HNJ project began to spiral out of control which prevented the signing of a construction contract and approval of construction plans. Defendants contend that these issues are the fault of plaintiff. In support, defendants offer the testimony of Al Mers, former THF employee, and Leroy Kline of Delta Management. Mers' and Kline's deposition testimony indicates that cost overruns caused by the Diocese's HNJ campus requirements may have played a part in the failure of the parties to

7

approve construction plans and execute a construction contract. (Doc. 55, Ex. 3, pgs. 97-101, Ex. 8, pgs. 22-23). Since the above testimony raises questions the Diocese's active fault, the court concludes that a genuine issue of fact exists, and, thus, we will deny summary judgment.

Finally, the Diocese argues that defendants have not offered any support for their defense that they advanced $570,000 to third-parties for the plaintiff's expenses. (Doc. 49 pg. 15). However, defendants have produced documents indicating that they forwarded checks to Westra Construction, Inc. for a total sum of $570,000. (Doc. 5, Ex. 21). Defendants claim these canceled checks show direct payments to third-parties just months after finalizing the amended agreement. (Doc. 56 pg. 8). While the evidence is not overwhelming, the court concludes that it raises a reasonable inference that defendants advanced monies on behalf of the Diocese to third-parties. The court therefore concludes that a reasonable jury could conclude that defendants advanced monies in an attempt to uphold their contractual obligations and, thus, we will deny summary judgment on this claim.

## IV. Conclusion

For the foregoing reasons, the Diocese is not entitled to summary judgment on its breach of contract claims. As a result, this case will proceed to trial on the issues elucidated in this memorandum.

An appropriate order will issue.


/S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge


Dated: March 10, 2010

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DIOCESE OF HARRISBURG,** | : | **CIVIL ACTION NO. 1:07-CV-2283** |
| Plaintiff | : | |
| | : | **(Judge Conner)** |
| v. | : | |
| | : | |
| **SUMMIX DEVELOPMENT** | : | |
| **COMPANY, THF HARRISBURG** | : | |
| **DEVELOPMENT, L.P., &** | : | |
| **THF HARRISBURG REALTY, INC.,** | : | |
| Defendants | : | |

# **ORDER**

AND NOW, this 10th day of March, 2010, upon consideration of plaintiff's motion for summary judgment (doc. 48), and for the reasons set forth in the accompanying memorandum, it is hereby ORDERED that plaintiff's motion for summary judgment is DENIED. A revised trial schedule shall issue in due course.

                                                   /S/ Christopher C. Conner
                                                   CHRISTOPHER C. CONNER
                                                   United States District Judge